Judge Mills
delivered the Opinion of the Court.
This is an ejectment, brought for a house and lot in the town of Cynthiana, and a verdict and judgment was rendered for the lessor of the plaintiff, from which the defendants have appealed.
The plaintiff gave in evidence, to shew title, six judgments against James Finley, and executions thereon; three of these were returned by the sheriff replevied, with the name of the sureties, and then executions of fieri facias, purporting to be issued on the replevin bonds, and returned, levied on the house and lot, which was not sold. The oilier three were original executions, on the remaining judgments, returned, also levied on the same house and lot, and that it was not sold. Then followed numerous executions of venditioni exponas, on each fieri facias, which were fruitless, and returned by the sheriff, with various excuses, why the sale was not executed. At length on one set of these, the sale is. returned, as made by virtue of the whole of them, and that the lessor of the plaintiff, now appellee, became-the purchaser, being the highest bidder, and. that he paid part of the money down in satisfaction of the executions on replevin bonds, and gave bond with surety for the residue, applied to the three other executions, satisfying the whole of them, except the junior one, which was in part only satisfied, leaving a balance still due thereon, lie next produced a conveyance from the sheriff, and shewed that the present appellants occupied the lot, as ten *316 ants of the said James Finley or claiming under him.
Motion for non suit overruled.
In ejectment on a title under an execution sale, against the defendant in the execution, in possession at the sale, that possession is prima facia evidence of title for the plaintiff.
Lapse of three year from the levy of the fieri facias, on land, during which plaintiff had writs of venditioni exponas continually issued in succession, will not effect the sale afterwards made.
*316 He here rested his evidence, and was met by a motion to instruct the jury, as in case of a non suit, which was overruled by the court in which decision, it is contended the court, erred; and in support of-that position, various objections are taken to the evidence, and to the title of the lessor of the plaintiffs, which, it is insisted are fatal. These we shall consider in order.
As to the insufficiency of the evidence, supposing the sale and conveyance to be regular, it cannot be maintained. It is true there was no written title shewn to be in Finley, the defendant, in the executions before the sale; but this was not necessary, as it was shewn that Finley, by himself or tenants possessed the lot; and this is a controversy solely between the purchaser and his tenants. Between these parties possession in the defendant in the execution, has been heretofore held by this court, sufficient evidence, at least prima facia, to warrant a recovery. See Campbell vs. Roberts &c. 3 Marsh. 623. It has been held by the courts of New York, that such a sale under execution and conveyance by the Sheriff, were conclusive evidence of title against the defendant in the execution, and that he is estoped to say that he had no title. But whether this doctrine is, applicable to sales under our statutes, we need not now determine. For it is sufficient in this case, if the plaintiff here has shewed such title, as not contested, warranted a recovery.
It is also insisted that the levy in this case, under the different writs of fieri facias, was such a length time before the sale, in obedience to the different writs of venditioni exponas, the period being in some of them two or three" years, the lien was lost, and the sale could not like place. This point is undenable in the mouth of the defendant in the execution or his tenants, whatever might be its validity in the month of the holder of another execution and sale under it. After the levy was once made, and the execution still unsatisfied, it would he difficult *317 for a defendant in execution to fix the precise period, at which the execution lost its hold, and his title became so untramelled that he could dispose of it at pleasure. If there be such a limit, it must be longer than the time here elapsed. Besides, the creditors under whom the appellee claims appear to have been in no default. They pressed unceasingly, one venditioni exponas after another, till they procured the sale, and did no act evincing the abandonment of their claim against the lot.
Several executions levied on real estate, may be combined and one sale made of so much of the property as will satisfy the whole.
The next exception is, that the sheriff could not sell the estate under different and numerous executions at the same time, some of which admitted of a credit, and others on replevin bonds, which required ready money; and that he ought to have sold so much of the estate by separate sales under each, as was necessary to discharge it; and to support this, the act subjecting lands to the payment of debts. 1 Dig. L. K. 513, is relied on, which directs the sheriff to sell the land, “or so much as may he sufficient.”
It is true that statute does give such directions. But it must be remembered, that although the statute speaks of but one execution, and gives this direction as to that one, yet it equally applies to every one, and each is entitled to the same privilege except as to the distribution of the money. Each has the same force and confers a like authority upon the sheriff. It can, therefore, do no damage to the defendant, as the sheriff must sell so much as will satisfy each, to permit him to sell so much, and so much only, as will satisfy all. Indeed when the the subject sold, as this is, shall not he conveniently devisable it might be sacrificed by parcelling it by sale after sale under each execution, when the whole sold at once, may command a better price; and if the amount bid for the whole exceeds the amount of the executions, it is then easy, by proper bidding, to strike off, in convenient form, so much by little and little, as will not sell more of the whole than will satisfy all. Indeed it is hard to perceive the difference between many executions, each confering an equal authority, operating at the same time together, and *318 one large execution equal to the whole. The sheriff, therefore, ran combine them, and thus do equal justice to the plaintiffs, the defendant and the purchaser. And he has only to look to the application of tho proceeds afterwards, to each execution, and give the proper preference which the law has directed ; and in doing this, the defendant cannot the materially interested it is more properly a question between tho different plaintiffs.
It is no objection to the combination of the executions, and one sale, that some of the executions required the sales on credits, and the others for money.
Querty—In making title under a sheriff's sale, made under several executions, would the fact appearing that one of one executions was owned by the deputy who levied it, and that another was afterwards endorsed for the benefit of the deputy who made the sale and owned by him at that time, be fatal?
*318 Nor do we, perceive any weight in that part of the objection which cavils at some of the executions being on replevin bonds, and others on judgments. Each gave an equal warrant to sell, and the difference is, one required prompt payment, and the rest admitted of a credit. If they had been separated their requisitions would have been the same, and to combine them, only required the terms to be made known to the bidders, and thus no injury, but same benefit might result to the defendant. This objection cannot, therefore, be sustained.
A further objection to this sale is, that it appears that one of these .executions was assigned to the deputy sheriff, when he made the levy, and another by an endorsement on the venditioni exponas, appeared to belong to another deputy, who made the sale, and the latter deputy, who made the sale, appeared to be, in fact, the security in one of the replevin bonds, and thus materially interested on both sides of the question. If this objection was Clearly made out in point of fact, and bad been seriously questioned in the court below, it might perhaps be difficult to get over It.
But all that appears is, that one of these executions of fieri facias, which is returned as levied on the, house and lot, by John Redman, deputy sheriff &c. has an.assignment on it purporting to be signed by the plaintiff, to “John Redman,” A venditioni exponas appears to be endorsed by tho clerk thus— This execution is for Hie use of John Paton” — and the sale is returned, as made by John Paton, deputy sheriff. It is also true that one of the original executions is returned, “levied and replevied, John Pa *319 ton security, bond enclosed,” signed by John Eaton, deputy sheriff &c.” The names of the principal sheriff being added, as in all these returns is the case. The subsequent executions after this turn, are against Finley, as principal, and John Paton as surety in the usual form. Although this appeared on these executions when produced by plaintiff in evidence, yet it is evident from the bill of exceptions, that the matter was passed over in silence, and no question was made concerning it. It is clear that if the point had been there made, there might have existed many ways of avoiding it. For instance, it might have been shewn that John Redman and John Paton, who were interested in these executions, were not the same as the deputy sheriffs engaged in the levy or sale; or if they were, that the interest of one, to wit, John Redman, did not accrue till after the levy was made; which seems probable enough, from a recurrence to dates, and he did not finally make the sale; or that their interest was extinguished long before the sale. And indeed it does not appear what authority the clerk had to endorse one of the executions of venditioni exponas, for the benefit of John Paton.
If such objection could avail against the title, they must be taken in the circuit court, and there urged—They will not avail taken here for the first time.
In making title under the sheriff's sale, the original judgment, execution returned replevied, with the name of the surety, and the corresponding execution on the bond are sufficient, prima facia, without producing the bond.
*319 Whether it would or would not effect the. sale, because be was interested as security in one of the replevin bonds, which would probably induce him, to sell the property for as much as possible, we need not enquire: because the matter was not questioned in the court below; which raises a prescription that the party knew that the objection coir t be clearly obviated by shewing the persons not it same, or in some other way, and that he then waived it, and it would take the appellee by surprise, and might do him injustice to permit the point to be stirred for the first time in this court, where no evidence to obviate it is admissible. This objection is, therefore, overruled.
The next objection to the title of the plaintiff, which we shall notice, is this. The original judgments are all produced. Three of them by the return of the sheriff seem to have been replevied, and the names of the surety is returned, The subse *320 quent executions appear to follow this return and to have issued against the surety returned, and no replevin bonds are. shown; and hence the question at rises, was the production of these bonds necessary, and is the title of the appellee defective without it.
It has been repeatedly lield by this court, that as lands are by the act of assembly,. to be sold in satisfaction of judgments, the judgment in sales of this sort, becomes a necessary muniment of title and must be produced.
It has also been held that a delivery bond, and consequently a replevin bond, is a sufficient judgment, to support a sale of this kind, Joyce vs. Farquar, 1 Marsh. 20. The force of this objection may be thus shewn; as a judgment is necessary and a replevin bond has the force of a judgment, and is sufficient without a judgment, and extinguishes the judgment, it ought, therefore, to be produced or the sale will not be good.
This argument is not without weight and difficulty; but still we apprehend it ought not to be held conclusive. Here the judgment, the real foundation of the proceeding, is produced, and is that to which the land is subjected by law. The return of the sheriff shews that it is replevied with the name, of the surety, and all subsequent executions, correspond with this return, and purport to be on a replevin bond. All this ought to be held prima facia sufficient to sustain the title. To this may he added, replevin bonds are not recorded. They remain as loose papers filed in our clerk's offices; the only recorded note of them appears in the return of the sheriff, and the bond itself may easily fade, so as not to he legible, or may be lost or mislaid. To make them, therefore, an indispensable requisite of title, to support a sheriff’s sale, after the original judgment, and the execution and return is produced from the record, would render titles acquired by sheriffs sales very insecure, and that insecurity would be increased by lapse of time, against which the permanency of the record is designed to provide.
This objection cannot, therefore, be sustained-,-
Lease for years made by defendant, after the levy of one of several executions, under all which the land is afterwards sold, is overreached by the sale.
Lease of land for a term not exceeding five years, need not be recorded.
And as we perceive no other vital defects in the title of the plaintiff below, we shall proceed to the Consideration of other questions arising out of the defence set up.
The defendants gave in evidence a lease from James Finley, for five years, and evidence conducing to shew that they had paid the rent, and that they had occupied the premises, under the lease, for aboiit two years, and then moved the court to instruct the jury, that as Finley would be estoped by the lease, so would the lessor of the plaintiff, who claimed by execution under him. This instruction .he court overruled, and we conceive correctly, There was no witness to the lease, or any proof when it was executed, except what its date affords, and that date is after the emanation and levy of several of the executions.
It is true, that by the first section of our act of assembly, regulating conveyances, 1 Dig. L. K .312, an unrecorded lease for a term, not exceeding five years, is admitted as valid and if Finley, prior io the operation of these executions, or the existence of a lien under them, had passed away the estate by a lease, not enrolled for that period, the sale must have been subject to the lease, and the purchaser under the execution could only have acquired the reversionary interest of Finley, after the lease had expired. But the fourth section of the act, subjecting lands to the payment of debts, provides, that “every writ of fieri facias shall bind the property of the lands, tenements and hereditaments from the time it shall be delivered to the officer who shall, without fee, endorse on every writ, the day and time of the day, when he received the same.”
It is evident that the operation of this section disabled Finley from making any disposition of the estate, whereby it could elude the executions, and' much more effectually was he disabled by the actual levy having been made upon the house and lot, under these writs. At that time he was deeply embarrassed, and under strong temptation, to make some disposition of the estate, whereby he could *322 reap the benefit of, and keep his creditors out of it. To prevent such disposition, was the design of this law, and it makes all such alienations void in law, as if fraudulent against the execution. Hence this lease was certainly overreached.
Where one execution in the hands of the sheriff overreaches a lease of the debtor's property, all other executions received by him before the sale are let in, and the lease is inoperative as to all.
The only point having an apparent difficulty in this part of the case is, that some one or more of the executions under which the house was sold, were lot or placed in the hands of the officer, till after this lease was made; hence it is insisted that these executions would have no operation on the property, and as the estate, was sold under them also, it cannot be valid. It is not correct that these executions could hate no effect, even if tho previous ones had not existed. They couhd have sold the title of Finley, subject to the lease. But as they could sell no more than that, how could they be blended with those which had ? This question may he partially answered by another, how could the officer know of this lease, so as to make the discrimination; and how could the division now be made between that, portion of the debts or executions, paramount to the lease and those inferior? The answer to this is, that neither law nor equity makes such a discrimination; but it is a general rule, that where, one debt reaches an estate another may follow if, and reap the benefit of the proceeds, although the latter standing alone, could not have avoided the alienation, lienee, it has been often held that although a fraudulent conveyance may be invalid as to prior creditors, and valid as to subsequent ones, yet if the prior debts were let in. the subsequent ones should be admitted also, and the deed be held fraudulent as to the whole. The reason and equity of such a rule is apparent, and it cannot be inapplicable or impertinent to the present case, where the law has declared the alienation positively void, and as it were, fraudulent. It would foe a phenomenon in law, to leave the defendant in possession of part, because his deed was part void and part valid, or good as to some creditors and bad as to others. If the law brings such a subject into market, it will generally dispose of the whole of the *323 proceeds, while there is a meritorious creditor left to claim his share. Hence the lease was entirely inoperative. The executions before the lease could sell and convey the interest leased, and the the residue.
One claiming adversely denied the privileges of a tenant at will.
Crittenden, for appellant; Haggin, for appellee.
One other question was made which scarcely deserves notice. The court was asked to tell the jury that tho tenants were to he considered as tenants at will, to the lessor of the plaintiff; and, therefore, he could not recover, without proving six months, previous notice, to quit the premises. There was no privity between the tenants and the plaintiff’s lessor. He had never given them the least intimation that they might remain, nor did they ask such, leave of him; but on the contrary, claimed adversely to his title under a void lease, which they now urge against his right of possession. How, under such circumstances, they can he supposed to he his tenants at will, we cannot divine According to this doctrine every adverse holding acquiesced in for a day, may soon he tortured into a tenancy at will.
The judgment is affirmed, with costs,